Good morning, Your Honor. George Hill for appellants. In this case, it's fairly simple, I would say. This is a Truth in Lending Act matter under 15 U.S.C. 1641 G. We're specifically talking about an assignment in May 11th of 2010, on or about that, and whether three years of equitable tolling should be allowed, even though the assignment was recorded. Generally, we've had rulings in this regard that says a recordation is all that is necessary to begin this statute of limitations. However, we do believe that this goes against the spirit of the Truth in Lending Act, and specifically 1641 G, in that it's supposed to give borrowers the direct notice of these backroom deals that they generally are privy to. Can you explain how your client was injured by the lack of notice? Indeed. Well, and I believe you're talking, going specifically to the Spokeo v. Robbins case. If you could address that, that would be great. No worries. In Spokeo, merely receiving phone calls seemed to be that concrete injury. Well, the Supreme Court didn't say that, right? Well, certainly they brought it back down for review, but I do believe that they, that was the intimation of the court, if not the direct ruling. We do believe hindering the ability of the McQuins to be able to negotiate with their true creditor for either loan modifications, any type of foreclosure assistance. Did they try to negotiate with the wrong entity? Well, they had Bank of New York Mellon, which is the defendant specifically in this case, never contacted them directly. So they always were dealing with the servicer of the loan, as opposed to Bank of New York Mellon, who is the direct creditor. And how were they injured? So I still don't understand yet, then, how they did anything different by not having this notice. Well, you can go above and beyond the servicer's hit. It's not this. But they didn't try to, right? Well, they didn't know of this creditor, and that's the issue. But they knew there was some creditor, right? I mean, what difference did it make which bank it was? Well, it makes a difference because servicers don't have a skin in the game. So if they are trying to get a loan modification or a foreclosure assistance, then they can, for lack of a better term, put off the borrower and things of that nature. However, the creditor specifically has those obligations. But did your client try to contact any creditor? Well, he's contacting the servicer. That's the only creditor he knows. He believes that the creditor is the servicer. And so how would notice have helped that? Well, notices helps that in that he can truly directly contact Bank of New York Mellon. But didn't he know there was some bank behind the servicer all along? Well, that's not clear. I believe the McQuins only directly have been involved with the servicer. So in that negotiation, when those attempts fail, where else do you go? You should be able to go above their heads, so to speak, and actually negotiate. Is there any reason to believe the servicer didn't communicate with the lender, didn't forward whatever it received? Well, I believe that the record shows that the direct contact with the servicer doesn't mention Bank of New York Mellon, and so that's the issue. That doesn't actually respond to the question. The question, is there any basis to believe that the servicer didn't relay whatever it received or did not communicate with the lender? I believe there is communication in regards to mortgage statements and things of that nature. No, I don't believe any direct communications from the Bank of New York were transferred between a servicer as the conduit. So you don't believe it. But my question was, is there any evidence or reason to believe? I mean, it's easier for you to say, nope, there wasn't any. You're not likely to know. So why is it we should believe that the failure to be able to communicate directly with Bank of New York, and I suspect just sending something to Bank of New York is not going to be very effective, but why should we believe that failure made any difference? Well, I mean, because in fact it does make a difference. If you don't have an ability to communicate with the party who has a true skin in the game. Think about this. Your client dropped something in the mail addressed to Bank of New York Mellon. Not really knowing who within that bank is going to know about this particular deal as compared to the servicer who is communicating on a regular basis with somebody at the bank who can apparently speak to it. Now ask yourself, which one of those is likely to be more effective? With that scenario, I would probably agree that contacting the servicer, they may have some sense in your game. So how has your client been injured? Well, I would say under the McQuinn scenario, however, he's been affected because the servicer hasn't been as communicative as needed. Wait, what do you mean by that? What do you mean the servicer hasn't been communicating? Communicative as needed, meaning that he should, excuse me, the servicer should be stating who the actual creditor is. And why? Why? What difference does it make to your client which bank it is? If they're going to go through the servicer anyway, and as Judge Clifton is saying, we have no reason to believe the servicer isn't talking to the right bank, why does your client care at all? My client doesn't have to contact the servicer, though. And when negotiations fail with the servicer, where does it turn? But your client isn't injured by the lack of information if they're not trying to contact someone. So if they're only trying to contact the servicer, you haven't said it's the wrong servicer. And if they're not trying to contact any bank, then I don't see how it matters whether there was a, which bank it should have been. They never tried anyway. Well, if you, you can't try for something that doesn't exist. Yeah, but they knew there was some bank, right? You don't deny that, do you? No, I don't deny that they had a lender, an original lender. So if they never tried to contact that lender, why do we think that if the lender started with B instead of C, it would have made a difference whether they contacted them? Well, the record doesn't say whether they contacted that overall true creditor, but the record does show that there was no mention of that new creditor. And so even if you had an inkling of wanting to contact that bank, you wouldn't be able to contact the original lender. But if your client could say to us, look, we thought Wells Fargo was our creditor, and so we wrote to them and we sent them money and they never did anything because they were the wrong creditor, then you'd have an injury for not knowing which bank. But you don't have that. You haven't said anything like that. Can you tell us anything like that? I am, actually, in that the servicer is holding itself out to be that creditor. And when negotiations fail for those foreclosure assistance and things of that nature, there should be some other recourse, whereas he doesn't know of that other recourse because the servicer is holding themselves out to be that creditor. And so that's what I believe in this case is the injury, is that they don't have true recourse with the true note holder, which is the only party that has any obligations under the loan, including the borrower himself, obviously. But those, Bank of New York is the only one that has the power to enforce that note and has the obligations. The servicer has a direct contract with Bank of New York, supposedly, or something of that nature, but doesn't have a direct contract with the borrower. And so that's the significant part. If they're holding themselves out to be the creditor themselves and he does not know of the second right of recourse, that is, in fact, a concrete injury. And that's what we believe. And that goes with the spirit of 1641G, which just says give them that direct notice. And I think it's also significant. But then why didn't Congress delete the statute of limitations or say it didn't apply to that provision? Well, I assume that they're relying on the same equitable tolling principles. We can't ‑‑ So Congress enacts a statute of limitations but says it really shouldn't apply here and we're going to let the courts figure that out for itself. We're not going to say that. I mean, the statute of limitations is in the statute, isn't it? It is. And you want us to read it out of the statute for this particular violation. Well, I think for 1641G, I think it's directly necessary because the borrower has no reason to know that a creditor has changed. Well, under California State law, there aren't constructive notice. I mean, California doesn't have to say that, but it does. And so if under California law your client has received constructive notice, then why shouldn't the limitations period start to run? Well, because truthfully that runs directly afoul of 1641G. It says nothing about that. Yeah, but the limitations period is in the same statute. You want us to pick one section of the statute and disregard the other because of some amorphous spirit. That's a tough sell. It may be. However, I do believe that we're not asking you to take out the statute of limitations. We're saying that until he has reason to believe that a new creditor has appeared, that statute of limitations shouldn't run. That's what equitable tolling is. Here we can't say let's put the onus on the borrower to go to the recorder's office monthly or even yearly. No borrower does that and shouldn't be expected to just because there's a statute of limitations on the truth in lending. Thank you. Good morning. May it please the court. Kerry Frannich for the appellees. My colleague's presentation, I think, nicely illustrates that there's really two issues that I think the court needs to make sense of. First, equitable tolling, and then second, what impact Spokeo has on this particular case. I'm going to start by addressing the equitable tolling. Shouldn't the issues be in the other order? I mean, how can we talk about equitable tolling if we don't have jurisdiction? Very well, Your Honor. I'll begin with Spokeo then. Noticeably absent from my colleague's presentation was any discussion of the reasoning used in Spokeo and how they reached the conclusion about how bare procedural violations are not enough to be a concrete injury. The part about Spokeo that stood out to me with this case in mind is how the court said that you're supposed to look at the history of the harm in deciding whether or not it's concrete enough. Whether or not the harm alleged in the case is something that historically and traditionally is protected by the courts. And here, the alleged harm in not telling the McQuins that Bank of New York was their new creditor is not something that historically or traditionally has been protected. And this case is a particularly good example proving so. The record in this case, Your Honor, shows that the party's actual contract, the deed of trust, specifically said that my clients had no obligation to notify the McQuins at all if their loan was ever transferred or sold. And that is in the record in the third volume of the excerpts at page 33, paragraph 20 of the deed of trust. So if the McQuins and my clients have reached an agreement among themselves that we don't even have to tell him Probably not a negotiated term, was it? It's not, Your Honor, to be fair. But I think that actually helps my argument because in terms of, like, the historical significance, the deed of trust is the standard deed of trust. And Congress comes along and decides that's not good enough and imposes an obligation to give notice. I'm really not sure where this argument is going. I mean, you can't pretend that Congress didn't pass what it passed. No, of course not, Your Honor. And you can't pretend that your client didn't have an obligation to give notice under the statute. The fact that the parties may have previously agreed to something else on terms dictated by the bank, so what? Well, the reason I raise the issue is if Spokeo is telling us that the court, in deciding whether or not the injury is concrete or not, needs to evaluate whether or not the right is historically protected, then the fact that the parties themselves have agreed that there's no requirement to provide notice, I think should play a role in the court's analysis. Is the holder of the beneficial interest under the deed of trust necessarily the holder of the loan? No, Your Honor. The holder of the note is the holder of the beneficial interest here at the Bank of New York. Wait a moment. You didn't answer that question directly. There are two documents. There's the deed of trust and there's a loan. Can you be the holder of the beneficial interest under the deed of trust, i.e., the beneficiary of the transfer of the property, but the loan is actually in somebody else's hand? The note, the person you have to pay is somebody else? Well, the answer, I think, is yes, Your Honor, only because in this particular case the original beneficiary of the deed of trust was MERS, which this court explained in the Cervantes case a few years back. It acts in its capacity as a nominee. So in a technical sense, yes, it could hold the beneficial interest in the deed of trust, whereas the note could be, in this case, with Bank of New York. We have a remarkable legal fiction that's been generated because of a desire to facilitate transfers, to make it easier to transfer the real interest, but to save some of the paperwork, they decided to create what actually turns out to be a headache for all of us applying the documents later. So it's sort of an Alice in Wonderland looking glass world where you have separate entities holding something that obviously is meant to be common. I mean, you don't have somebody exercising rights under a deed of trust unless, in fact, they've been the victim of a loan default. So the complications have generated lots of work. Complications created by lawyers have generated lots of work for other lawyers, and sadly also lots of work for judges. Very well, Your Honor. The other comment that I'd make about Spokeo briefly, and this gets back to your comment earlier, Judge Clifton, Congress has unequivocally said we want to arm homeowners with this information. For better or worse, that's what Congress has said. And Spokeo says that Congress's judgment should be given some credence by the court in deciding whether or not there's an intangible harm. So in this case, I think it contrasts with some of the decisions that were flagged in Spokeo as to, for example, in Spokeo they highlighted two decisions where there was intangible harm and what, at least on the surface, was a bare procedural violation of a statute. But the court nonetheless, in those cases, held that there was a sufficiently concrete injury. I want to talk about those cases briefly because I think they're nothing like the present case. The first case that Spokeo flagged was Federal Election Commission v. Aikens, and the second was Public Citizen v. Department of Justice. In both of those cases, Spokeo remarked that Congress has said the statute exists, it was violated. Perhaps in those types of cases, that's enough to be a concrete harm. Well, the reason I'm flagging those cases is each of those involved a very different right. In those cases, Aikens involved voting rights, and then in Public Citizen, it involved an organization's participation in the political process. Both of those, historically, have received tremendous protection by the courts. They involve fundamental rights, whereas here, in contrast, the McQuins are complaining about not being told that they had a new creditor. The way I see it, they're apples and oranges. I see I only have three minutes left, so if I may, I'll shift gears to talk about equitable tolling. My colleague's presentation illustrated one possible problem with the statute of limitations, which is homeowners are not in the habit of monitoring what's recorded. When was the last time you went to the records office and checked out the possibility of something being filed on your property? Exactly right. You're illustrating my point. So, I understand that point. That's a somewhat sympathetic argument. Homeowners are not going to run down to the recorders office every month just to confirm whether or not they have a new creditor or not, and that's not what we're asking them to do. So, for a moment, what I'd like the court to assume is, assume my colleague is correct. Assume that recording the assignment of the deed of trust does not impart constructive notice. The outcome in this case should be no different, and there's two reasons why. The record here shows that not only was the assignment recorded, but in March of 2010, the McQuins received a notice of default, and on page two of the notice of default, in big capital letters, it said if you want to know how much you owe on this loan, or if you want to arrange to cure your default or to stop foreclosure, please contact Bank of New York Mellon, and then it provided an address and a telephone number. And that is in the second volume of the excerpts at pages 49 and 130. So, why is somebody who receives that supposed to make sense out of it? Who's this Bank of New York? I live in California. My lender was Bank of America. This must be a mistake. I mean, it's probably a scam. You know, I get calls saying I owe money to the IRS. I'm not sure that really gives effective notice and explains to the homeowner what's happened behind the bank curtain. I think it does if they're trying to invoke equitable tolling, Your Honor, because the standard under that rule is that they have to be able to show that they were unable to obtain vital information bearing on the existence of their claim. So if they received something in writing telling them, contact Bank of New York Mellon, and that was in 2010, whether or not the assignment was recorded or not, at that moment, it was incumbent on them to pick up the phone and start asking questions at that point in time. Now, the last point relating to equitable tolling that I think they have a problem with, and I see I only have about 30 seconds left, is unlike most homeowners, the McQuins were not simply sitting by trying to, you know, watching the foreclosure process happen. They actively tried to stop it. They recorded in 2012, I suspect because they got duped into some kind of debt elimination scam, a document purporting to reflect... Did we mention any of this in your brief? I believe we did, Your Honor. I see I'm out of time. Go ahead and answer that question. Thank you, Your Honor. Our brief flagged that they recorded this instrument. On page 3 of our brief, it says, the McQuins tried to avoid foreclosure by recording a unilateral revocation of their deed of trust. So my point there is they were in a particularly good situation to discover the recorded assignment because they themselves went out of their way to record an instrument of their own. Unless the Court has any questions, I'll submit. Thank you. We thank both counsel for your arguments. The case just argued is submitted.
judges: Fernandez, Clifton, Friedland